UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE NO.

ERNESTO RIVERO

    Plaintiff,

v.

PATRICK INDUSTRIES, INC.

    Defendant.

_____/

## COMPLAINT

COMES NOW, Plaintiff, ERNESTO RIVERO (hereafter referred to as "Plaintiff"), by and through his undersigned counsel, and hereby sues Defendant, PATRICK INDUSTRIES, INC. (hereafter referred to as "Defendant") and as grounds alleges:

### JURISDICTIONAL ALLEGATIONS

1. This is an action to recover monetary damages, liquidated damages, interest, costs, and attorney's fees for willful violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), and American with Disabilities Act of 1990, 42 U.S.C. Sec. 1211, et seq. ("ADA"), to redress injuries resulting from Defendant's unlawful and discriminatory based actions against Plaintiff.

### PARTIES

2. Plaintiff, ERNESTO RIVERO, is an adult, male resident of Sarasota County, Florida.

3. Defendant, PATRICK INDUSTRIES, INC. is a Florida corporation authorized to conduct business in the State of Florida and in Sarasota County, Florida.

4. At all times material hereto, Plaintiff is an "employee" within the meaning of the ADA 42 U.S.C. Sec. 1211, *et seq.*

5. At all times material hereto, Defendant is an "employer" within the meaning of the ADA 42 U.S.C. Sec. 1211, *et seq.*

6. At all times material to this Complaint, Plaintiff was an "eligible employee" as defined by the FMLA, 29 U.S.C. §2611(2)(A).

7. At all times material, Defendants were "employers" as defined by 29 U.S.C.§ 2611(4).

8. The Defendant employ more than 50 employees within a 75-mile radio.

9. At the time of her unlawful termination, Plaintiff had worked for Defendants for over one year and had accumulated more than 1,250 hours of work.

## JURISDICTION AND VENUE

10. Venue is proper because the events/employment practices alleged in this Complaint to be unlawful were committed in Sarasota County, within jurisdiction of this Honorable Court.

11. Plaintiff filed a charge of discrimination against Defendant with the Equal Opportunity Commission (hereafter referred to as "EEOC") and the Florida Commission on Human Relations (hereafter referred to as "FCHR").

12. Plaintiff files this complaint within 90 days after receiving a Notice of Right to Sue from the EEOC.

13. All conditions precedent for the filing of this action before this Honorable Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## FACTUAL ALLEGATIONS

14. Defendant hired Plaintiff on or about March 16, 2015.

15. Throughout his employment, Plaintiff performed his work admirably and successfully.

16. On or about the year 2018, Plaintiff was diagnosed with colon cancer.

17. On or about May 11, 2018, Plaintiff had laparoscopic colon resection surgery to treat his colon cancer.

18. Plaintiff received documentation after the surgery that allowed Plaintiff to return to work on or about July 9, 2018, with work restrictions of light duty for three weeks that were to end on August 6, 2018.

19. Plaintiff returned to work on or around July 9, 2018.

20. Plaintiff notified Defendant of his surgery and gave all documentation to them to be notified of his current situation.

21. When Plaintiff returned, Defendants engaged in conduct toward Plaintiff, in the workplace, which created an extreme, pervasive and severe hostile work environment

22. Supervisors Carlos Rodriguez and Hector Lopez, who knew of Plaintiff's conditions and work restrictions, began to give Plaintiff an unprecedented heavy workload that was not normally assigned to him. Both supervisors Carlos Rodriguez and Hector Lopez also expressed to Plaintiff that he will have to begin working many overtime hours in addition to his new extremely busy workload.

23. Plaintiff expressed to his supervisors, Carlos Rodriguez and Hector Lopez, of his recent surgery and spoke to them of the recent unprecedented heavy workload. Both supervisors, Carlos Rodriguez and Hector Lopez told him that he had to complete all his jobs and work the overtime hours if he wanted to keep his job with the company.

24. Plaintiff was also threatened by supervisors, Carlos Rodriguez and Hector Lopez that he would lose his employment with Defendant if he went to the medical appointments

within his work schedule. Plaintiff was forced to schedule all his doctor's appointments and continuous follow ups only during times when he was not working with Defendant.

25. Plaintiff felt coerced and threatened by Defendant due to the actions of supervisors Carlos Rodriguez and Hector Lopez. Due to a fear of losing his job with Defendant, Plaintiff worked the heavy work hours and extensive overtime hours that he was asked to do.

26. Although Plaintiff continued to excel in his position, after Defendants became aware of Plaintiff's disability or perceived disability, Plaintiff noticed that Defendant began treating him different than other similarly situated employees who did not have a disability or a perceived disability.

27. Regardless of his ongoing disability or perceived disability, Plaintiff was able to perform the essential functions of his position with and/or without reasonable accommodations.

28. Although Plaintiff was able to do his essential functions of his position without reasonable accommodations, Plaintiff requested Family Medical Leave Act ("FMLA") on June 8, 2019 to continue his ongoing treatment.

29. When Plaintiff told his supervisor Hector Lopez about his FMLA request, Hector Lopez told Plaintiff that his request for FMLA "was not going to protect him."

30. On or about June 26, 2019, Plaintiff's FMLA request was approved for one year.

31. Although Plaintiff's FMLA request was approved, Plaintiff work duties did not decrease in the slightest. Plaintiff also requested to be removed from the lead person position to reduce his workload, but his requests were ignored.

32. Plaintiff went to Human Resources to request work accommodations. Such accommodations would have enabled him to perform his essential job functions to satisfy Defendant's standards and requirements.

33. However, Human Resources replied to Plaintiff on or around September of 2019 that the company was unable to give him work accommodations. Besides rejecting Plaintiff his work accommodations, Human Resources reduced Plaintiff's salary and changed his position.

34. Plaintiff reported to his new position, only to find out that it was in fact the same job responsibilities and duties as his original job position, but with reduced pay. Plaintiff continued to experience heavy work loads and extensive overtime hours.

35. Plaintiff was treated differently than other employees in similar situated positions.

36. On or around May 27, 2020, Plaintiff requested Defendant two sick days to receive a colonoscopy. Plaintiff also notified his supervisor Hector Lopez of his request for the sick days.

37. Supervisor, Hector Lopez, told Plaintiff in a rude and demeaning matter that any sick day request had to "go through him and him only since Human Resources lacked the authorization to approve such request."

38. Shortly after being berated by supervisor Hector Lopez, Plaintiff began to feel ill and lost consciousness. Plaintiff was unconscious for ten minutes. In the meantime, while Plaintiff was unconscious, no employee including supervisor Hector Lopez who had witness the situation called for medical rescue or attempted to help Plaintiff in his state of crisis.

39. Plaintiff regained consciousness after ten minutes of being on the floor, in which supervisor Carlos Rodriguez took him to a clinic. At the clinic, supervisor Carlos

Rodriguez told Plaintiff that the company didn't allow him to stay so he left Plaintiff alone in the clinic. Plaintiff had to call his daughter to help transport him to the emergency room. Plaintiff returned to work the following week after the incident.

40. On or around June 26, 2020, Plaintiff requested FMLA again from Defendant.

41. Plaintiff called Aracelys Reyes from Human Resources on several occasions to check on the status of his FMLA request but did not get an answer to his calls.

42. On or about August 7, 2020, supervisor Carlos Rodriguez kept asking Plaintiff to work more overtimes hours than he was currently already doing. Plaintiff expressed that he felt exhausted and dehydrated working so many hours over forty hours. Angry at his response, supervisor, Carlos Rodriguez, sent Plaintiff home.

43. On or about August 11, 2020, Plaintiff had a meeting with supervisors, Carlos Rodriguez and Hector Lopez. Aracelys Reyes from Human Resources was also present in the meeting.

44. In the meeting, Carlos Rodriguez, Hector Lopez, and Aracelys Reyes told Plaintiff that if he was unable to work the overtime hours assigned to him, that he had to quit. They also expressed that Plaintiff could not receive a promotion or pay raise due to him being under FMLA. Plaintiff was also given a warning for failure to work overtime hours.

45. On or about August 12, 2020, Human Resources gave Plaintiff documents that had to be filled out by his doctor. Plaintiff notified his doctor of the documentation that had to be filled out, and Plaintiff's doctor sent the correctly filled documents to Human Resources directly the following day.

46. On or about August 27, 2020, Plaintiff was contacted by Human Resources that his doctor allegedly filled out the documents incorrectly and was told that he could no longer work for Defendant unless his doctors change the document information.

47. Mitizi Sanders from Human Resources called Plaintiff's doctor personally and demanded that Plaintiff's doctor had to change the documents that were sent to Human Resources. Plaintiff's doctor refused to do such a thing because she believed that doing such a thing would prejudice Plaintiff and his employment with Defendant.

48. Shortly after, Mitizi Sanders from Human Resources presented Plaintiff with a new contract which stated that he had to work forty hours per week from Monday through Thursday. The contract further stated that overtime hours were going to be determined by his supervisors per workload requirement, and that overtime was mandatory. Plaintiff was ordered to sign the new contract and to give up his FMLA.

49. Plaintiff refused to sign the new contract and to give up his FMLA protections. Mitizi Sanders from Human Resources then informed Plaintiff that he could no longer work for Defendant unless he had a new doctor fill out the documentation the way they wanted it.

50. Plaintiff was constructively discharged on or about August 27, 2020.

51. The unlawful employment practices complained of herein and the actions of Defendants and Defendants' agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

52. As a result of Defendant's discriminatory treatment of Plaintiff based on his disabilities or perceived disabilities, Plaintiff has suffered damaged and was forced to retain undersigned counsel.

## COUNT I: INTERFERENCE WITH FMLA RIGHTS - TERMINATION

53. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-52 above as is set out in full herein.

54. Plaintiff was an "eligible employee" and entitled to leave under the FMLA.

55. At all times material, Plaintiff gave proper notice to Defendants by informing Defendants of his medical condition and of his need to take FMLA leave. Specifically, Plaintiff told Defendants that he was going to take FMLA and has sent numerous request to Human Resources. Also, Plaintiff gave proper notice when he conveyed his needs regarding his doctor visits and surgery related to his colon cancer.

56. Defendant failed to afford Plaintiff the right to take FMLA when it refused to approve Plaintiff's FMLA requests and during the times of Plaintiff's doctor's appointments and surgery and demanded that Plaintiff continued to work.

57. Despite Defendants' knowledge of Plaintiff's serious health condition, Defendants terminated Plaintiff instead of affording him the opportunity to take FMLA leave.

58. When Defendants impeded on Plaintiff's right to take leave, and fired Plaintiff, they interfered with Plaintiff's rights under the FMLA.

59. As a result, Plaintiff has been damaged.

WHEREFORE, Plaintiff demands judgment against Defendants, as follows:

a. Enter judgment in Plaintiff's favor and against Defendants for interfering with Plaintiff's rights under the FMLA;

b. Award Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, and lost future earnings capacity;

c. Award Plaintiff liquidated damages;

d. Award Plaintiff prejudgment interest on his damages award;

e. Award Plaintiff reasonable costs and attorney's fees;

f. Award Plaintiff any further relief pursuant to the FMLA; and

g. Grant Plaintiff such other and further relief as this court deems equitable and just.

## COUNT II: VIOLATION OF THE FMLA – RETALIATION

60. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-52 above as is set out in full herein.

61. Plaintiff was an "eligible employee" and entitled to leave under the FMLA.

62. At all times material, Plaintiff gave proper notice to Defendants by informing Defendants of his medical condition and of his need to take FMLA leave. Specifically, Plaintiff told Defendants that he was going to take FMLA and has sent numerous request to Human Resources. Also, Plaintiff gave proper notice when he conveyed his needs regarding his doctor visits and surgery related to his colon cancer.

63. Defendants intentionally engaged in unlawful employment practice in violation of the FMLA, by retaliating against Plaintiff when, after Plaintiff requested to take FMLA for medical reasons, Defendant rejected and threatened Plaintiff as described in the factual allegations, then terminated Plaintiff.

64. Plaintiff's request for medical leave pursuant to the FMLA was a direct and proximate cause of his termination.

65. As a direct and proximate result of the intentional violations by Defendants of Plaintiff's rights under the FMLA, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. Enter judgment in Plaintiff's favor and against Defendants for violations of the FMLA;

b. Award Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity;

c. Award Plaintiff liquidated damages;

d. Award Plaintiff prejudgment interest on his damages award;

e. Award Plaintiff reasonable costs and attorney's fees; and

f. Grant Plaintiff such other and further relief as this court deems equitable and just.

## COUNT III
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

66. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-52 above as is set out in full herein.

67. The American with Disabilities Act, 42 U.S.C. Sec. 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge or employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. Sec. 12112.

68. Plaintiff is a member of a protected class under the ADA.

69. Plaintiff was qualified for his position with Defendant but suffered adverse employment action as mentioned by the conduct described above. Defendant treated Plaintiff less favorably than similarly situated individuals outside his protected class that lead to his wrongful termination of his contract not being renewed.

70. Such discrimination was based upon the Plaintiff's disabilities or perceived disabilities. Plaintiff would not have been the subject of Defendant's discrimination but for the fact of his disabilities or perceived disabilities.

71. Plaintiff was fully qualified to be employed by Defendant and could perform all the essential function of the position held with Defendant.

72. Defendant is a covered employer to which the ADA applies.

73. Defendant constructively discharged Plaintiff from employment because of Plaintiff's disabilities or perceived disabilities.

74. Plaintiff performed his essential functions of the job without the reasonable accommodations.

75. Defendant's constructive discharge of Plaintiff on the basis of his disabilities or perceived disabilities violated the ADA. Regardless of his ongoing disability or perceived disability, Plaintiff was able to perform the essential functions of his position with or without reasonable accommodations.

76. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. Defendant and its supervisory personnel were aware that discrimination on the basis of Plaintiff's disability was unlawful but acted in reckless disregard of the law.

77. At all times material hereto, the employees exhibiting discriminatory conduct towards the Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

78. Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

79. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent

continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

80. The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

81. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

82. As a result of Defendant's actions, Plaintiff has suffered and will continue to suffer both economic and non-economic harm.

WHEREFORE, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree the Defendant has violated the ADA, and has willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d. Award Plaintiff the costs of this action, together with reasonable attorney's fees; and

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Respectfully submitted

/s/: *Elvis J. Adan*
Elvis J. Adan, Esq.
Fla. Bar No.: 24223

GALLARDO LAW OFFICE, P.A.
8492 SW 8th Street
Miami, Florida 33144
Telephone: (305) 261-7000
Facsimile: (305) 261-0088